IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ARMOUTH INTERNATIONAL, INC. | ) | |
| | ) | |
| v. | ) | No. 3:14-0567 |
| | ) | |
| DOLLAR GENERAL CORPORATION | ) | |
| and DOLGENCORP, LLC, a subsidiary of | ) | |
| Dollar General Corporation. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Armouth International, Inc. (hereinafter referred to as "Armouth") filed an expedited motion to compel on June 11, 2015 (Docket Entry No. 37)[1] requesting that Defendants Dollar General Corporation and Dolgencorp, LLC (hereinafter referred to collectively as "Dollar General") be required to produce emails that were either withheld or redacted based on claims of attorney-client privilege. Armouth requests that the Court conduct an *in camera* review of the emails in question to determine if the attorney client privilege applies to all of the emails withheld or redacted by Dollar General, and enter an order requiring the production of any emails not subject to attorney-client privilege. For the reasons that follow, Plaintiff's motion is DENIED.

**I. BACKGROUND**

Armouth filed a complaint on February 24, 2014, alleging that Dollar General failed to pay invoices and cancelled orders it had placed with Armouth for, among other things, scrub tops and scrub bottoms. DE 37 at 2. For purposes of this motion, the relevant facts are as follows.

---

[1] Docket Entry references will hereinafter be identified as "DE" followed by the corresponding Docket Entry number and page number.

In January of 2013, Dollar General tested some of the merchandise supplied by Armouth, including scrub tops and scrub bottoms, and found that the merchandise did not conform to the labeling standards set forth by the Federal Trade Commission (hereinafter referred to as "FTC"). *Id*.; DE 38 at 1-2. Specifically, the testing allegedly revealed that Armouth's labels did not accurately reflect the percentage of each fiber contained in the scrub tops and bottoms. DE 38 at 1-2. As a result, Dollar General placed a "hold" on the Armouth merchandise that was stored in its distribution centers, thereby preventing the merchandise from being distributed to and sold in Dollar General retail stores. *Id*. at 2. This hold also included a refusal by Dollar General to pay Armouth for the merchandise allegedly in violation of the FTC standards. DE 37 at 2.

Several months later, in May or June of 2013, Dollar General released this hold, thus allowing the merchandise to be distributed to its retail stores for sale. *Id*. Dollar General states that the decision to release the hold was made by Robert Stephenson, Assistant General Counsel for Dollar General. DE 38 at 2. Although no explanation has been provided as to why the hold was released, Dollar General asserts that Mr. Stephenson's decision was purely legal and involved, at most, minor business considerations. *Id*. at 6.

Despite Dollar General's claim otherwise, Armouth argues that Mr. Stephenson was acting with his "business hat," as opposed to his "legal hat," and that the emails withheld and redacted by Dollar General involving Mr. Stephenson are therefore not subject to the attorney-client privilege. DE 37 at 3. Armouth cites Mr. Stephenson's role as "head of the Compliance Department" and "supervisor to the Senior Director of Global Sourcing" to argue that Mr. Stephenson's decision to release the hold was based on business considerations, and thus his communications pertaining to the release cannot be withheld based on attorney-client privilege. *Id*. at 5. Armouth contends that

Mr. Stephenson was acting, at a minimum, in a dual role in which he dispensed both business and legal advice to his client, and therefore the Court should review all 52 of the communications withheld or redacted by Dollar General to determine which emails are protected by the privilege. *Id.* at 4-5.[2]

## II. ANALYSIS

Armouth's motion to compel is filed in light of Dollar General's written discovery responses and the deposition testimony of Cindy Long, Vice-President and Divisional Merchandise Manager of scrubs at Dollar General, who testified that the decision to release the hold in question was made by Dollar General's compliance team.[3] *Id*. at 1-3. Armouth also cites the deposition of Beth Gammons, Dollar General's Senior Director of Global Sourcing and the individual who oversaw the testing of the merchandise, claiming that Ms. Gammons stated that she was not involved in the "business" decision to eventually release the hold. *Id*. at 3. Dollar General does not deny this, and responds that Mr. Stephenson was in fact the individual who made this "legal" decision. DE 38 at 2.

Neither party disputes that relevant documents may be withheld from discovery if the documents reflect privileged communications. *Lewis v. United States*, 2004 WL 3203121, *1 (W.D. Tenn. Dec. 7, 2004). The issue at hand is whether there is a sufficient basis for the Court to conduct an *in camera* review to determine whether all of the emails withheld or redacted by Dollar General are protected by the attorney-client privilege.

---

[2]Dollar General notes that, during the course of discovery, it provided approximately 3,700 emails and 224,000 pages of other documents. DE38 at 2.

[3] The testimony in question is not cited by Armouth. Armouth states that the deposition transcript was not yet available at the time of the filing of its motion.

The attorney-client privilege is not absolute, and in order for the attorney-client privilege to apply:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Royal Surplus Lines Ins. v. Sofamor Danek Group*, 190 F.R.D. 463, 487 (W.D. Tenn. 1999) (quoting *Humphreys, Hutcheson & Moseley v. Donovan*, 568 F.Supp. 161, 175 (M.D. Tenn. 1983)). According to Dollar General, the communications at issue involve emails that are: (1) from Mr. Stephenson providing legal advice to Dollar General employees regarding the tested merchandise; (2) from employees to Mr. Stephenson requesting legal advice; (3) from employees to Mr. Stephenson providing information necessary for Mr. Stephenson to provide adequate legal advice regarding the tested merchandise; or (4) between employees relaying Mr. Stephenson's legal advice as it pertains to the ongoing situation with Armouth. DE 38 at 2-3. Dollar General contends that all such communications are protected by the attorney-client privilege.

As noted by Armouth in its motion, the party asserting the attorney-client privilege bears the burden of establishing that the privilege is applicable. *John B. v. Goetz*, 879 F. Supp. 2d 787, 892 (M.D. Tenn. 2010). Armouth further notes this Court's previous statement that, "[i]n evaluating assertions of attorney-client and work product privileges, as procedural matter, the district court should require an *in camera* review of the disputed document(s)." *Id*. (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 169 (6th Cir. 1986)). Nevertheless, the Supreme Court has expressed

4

reservations about the use of *in camera* reviews concerning privilege claims, cautioning that, "[t]oo much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect, while a complete abandonment of judicial control would lead to intolerable abuses." *U.S. v. Zolin*, 491 U.S. 554, 570-71, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (quoting *U.S. v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953)). The Supreme Court additionally warned that there is "no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *Id*. at 571.

In *Zolin*, the Supreme Court delineated the standard for determining whether an assertion of attorney-client privilege warrants an *in camera* review by the presiding judge. While the Supreme Court applied this standard specifically to the crime-fraud exception, this Court finds that the standard is appropriate in this matter to evaluate whether the documents requested for *in camera* review may reveal evidence of business advice that is not shielded from discovery by the attorney-client privilege:

> In fashioning a standard for determining when an *in camera* review is appropriate, we begin with the observation that "*in camera* inspection. . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public discourse. We therefore conclude that a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege. The threshold we set, in other words, need not be a stringent one.
>
> We think that the following standard strikes the correct balance. Before engaging in *in camera* review. . ., "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," that an *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
>
> Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the

5

> relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through an *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Id*. at 572 (internal citations omitted). In the instant case, Armouth effectively argues that Dollar General has improperly withheld communications in which Robert Stephenson, as in-house counsel for Dollar General, exercised business discretion that is not protected by the attorney-client privilege. In support of this contention, Armouth points to the following events: Dollar General tested the products and placed a hold on the merchandise in January of 2013; Dollar General then released the hold several months later; the merchandise testing process was controlled by Dollar General's compliance team; and that Robert Stephenson was the "head" of the compliance team. DE 37 at 2-3. Armouth believes that this information sufficiently demonstrates Mr. Stephenson's role in making business, as opposed to legal, decisions.

The Court is not persuaded that this series of events, nor Armouth's unsupported speculation, forms a "factual basis adequate to support a good faith belief by a reasonable person" that an *in camera* review of the emails contained in Dollar General's privilege log would reveal communications involving business advice unprotected by the attorney-client privilege. Armouth is unwilling to believe that Mr. Stephenson was acting in a legal capacity when the decision was made to release the hold on its merchandise, despite the fact that the hold was originally implemented due to legal considerations, i.e. the failure of Armouth's merchandise to comply with federal law with respect to labeling standards. Dollar General has specifically stated that it placed the hold after receiving the results from the tested merchandise. DE 38 at 2. Armouth does not appear to dispute this claim. It instead maintains that Mr. Stephenson exercised business discretion

in releasing the hold. DE 37 at 3. However, as Dollar General states in its response, the decision to release the hold was made by Mr. Stephenson precisely because it required the legal opinion of an attorney. DE 38 at 5. Furthermore, even if Mr. Stephenson had considered some aspects of business in making his decision, such consideration does not necessarily remove the coverage afforded by the attorney-client privilege. Dollar General correctly notes that district courts have held that the "mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Curtis v. Alcoa, Inc.*, 2009 WL 838232, at *2 (E.D. Tenn. Mar. 27, 2009).

The privilege log provided by Dollar General during discovery contains the date of each communication being withheld or redacted, as well as a description of the communication, and includes the author and recipients of the communication. *See* DE 37-1. Armouth relies on the fact that Mr. Stephenson was not mentioned or was not a party to some of the emails in question in support of its argument. DE 37 at 3. It attaches multiple redacted emails to its motion in an attempt to demonstrate this point. *See* DE 37-2. However, the privilege log indicates that all of the cited emails that did not directly involve Mr. Stephenson, but were nevertheless redacted by Dollar General, involve communications concerning legal advice rendered by Mr. Stephenson. For example, Armouth points to a January 29, 2013 email between Larry Gatta and Todd Vasos, both Dollar General employees, in which Mr. Stephenson is not mentioned. DE 37-2 at 1. The privilege log indicates that this email consisted of Mr. Vasos "relaying Rob Stephenson's legal advice related to the non-conforming scrubs" to Mr. Gatta. DE 37-1 at 1. This appears to match the substance of the email's content prior to the redacted portion, which concludes with, "now for the bad news. Their label does not match the product." DE 37-2 at 1. It is logical that the remainder of the email

7

would pertain to Mr. Stephenson's legal advice regarding the nonconforming goods. The privilege log thus complies with the Federal Rules of Civil Procedure, which require a party withholding documents on the basis of privilege to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). There is no evidence that Dollar General failed to comply with this mandate.

As importantly, it appears likely from the context of the redacted emails, the privilege log, and the circumstances of the events, as described in the parties' papers, that the withheld information was legal advice protected by attorney-client privilege. This consideration thus weighs against requiring an *in camera* inspection.[4]

Armouth also cites this district court's opinion in *Jon B. v. Goetz*, in which the court held that the "district court should require an *in camera* review of the disputed document(s)." *Goetz,* 879 F. Supp. 2d at 892. However, the Court finds that the substantially different facts and nature of the dispute in the *Goetz* case make it inapplicable to the Court's considerations in this case. In *Goetz*, suit was filed on behalf of approximately 550,000 children who alleged that the defendants, consisting of state officials, had deprived them of their right to various medical services under the state's TennCare program. *Id*. at 793. That very complex action involved an intense and protracted discovery dispute over an immense amount of electronically stored information ("ESI").

The court conducted an *in camera* review of disputed discovery documents based on multiple factors, including the defendants' repeated noncompliance with court orders, the "highly technical"

---

[4]Neither party addressed the relative importance of the information claimed to be privileged. The Court therefore considers this factor to be neutral in the analysis.

nature of the documents, and the specific discovery protocols implemented in the case. No such circumstances surround the instant case. Dollar General has not failed to comply with any Court orders or other discovery protocols. Neither the subject matter nor the specific emails in dispute involve highly technical information that warrants an *in camera* review by the Court.

Finally, the Sixth Circuit opinion cited by the *Goetz* court and Armouth, *In re Antitrust Grand Jury*, involved a district court's decision to order production of documents that it held would be subject to subpoena under the crime-fraud exception. *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1986). It entered this order upon finding that the government had established a *prima facie* case of a Sherman Act violation against the defendants. *Id*. However, the trial court failed to review any of the myriad of documents prior to ordering their production, despite the fact that the defendants had claimed attorney-client and work product privileges. *Id*. at 165. The Sixth Circuit found this to be error:

> Since all of the [defendants] have asserted their privileges in this case, the only way the district court can determine if any of the documents are subject to a subpoena under the crime-fraud exception is by reviewing them. Ordering production *en masse* creates the potential that some material not within the scope of the crime-fraud exception could be ordered produced.

*Id.* at 168. The Sixth Circuit thus found that *in camera* review was necessary in that particular instance to both define the parameters of the district court's order, and to determine whether grand jury testimony regarding the antitrust violations was supported:

> We are a little confounded as to why the district court did not review the documents *in camera* before ordering them produced. Not only do we believe *in camera* review is mandated to determine the scope of the [district court's] order, *in camera* review of the documents could have assisted the court in determining whether a *prima facie* violation had been made. We find this procedure proper, particularly when the government's only evidence is grand jury testimony not subject to disclosure.

*Id*. The district court found that because the government had established a *prima facie* case of a Sherman Act violation by the defendants, "all legal assistance provided by the [defendants'] law firms was in furtherance of that violation." *Id.* at 165. It therefore ordered production of every document withheld on the basis of attorney-client privilege. *Id*. The Sixth Circuit found that this ordered mass production of documents without first conducting an *in camera* review was error. That holding does not mandate an *in camera* review in this case.

Here, Dollar General's claims of privilege are narrow and specific. Dollar General has reasonably rebutted the speculation by Armouth that Mr. Stephenson was giving business advice (or predominately giving business advice) rather than legal advice.

*In camera* review is not appropriate simply because a party objects to the assertions of privilege. *Zolin*, 491 U.S. at 571-72. Despite Armouth's conjecture regarding Mr. Stephenson's role in releasing the hold on Armouth's merchandise, the Court finds no evidence that warrants an *in camera* review of the emails withheld or redacted by Dollar General. Engaging in such a procedure "would constitute. . . an expenditure of judicial resources that could be justified only by an implicit determination that the representations made by defense counsel are untrue." *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 176 (S.D. Ohio 1993). The Court finds no basis for any such determination in this matter.

The Court agrees with Dollar General that Armouth's blanket request for review of the entire privilege log suggests a "fishing expedition," as opposed to a specific request to discover relevant information. The Court also notes that granting Armouth's motion, which broadly requests a review of all of Dollar General's emails withheld based on attorney-client privilege, would open the floodgates and allow any party to demand an *in camera* review of the opposing party's attorney-

client communications so long as the former expressed an unfounded suspicion that counsel for the latter had misrepresented the basis for the privilege claim. For the these reasons, Armouth's motion is DENIED.

ANY OBJECTIONS to this Memorandum and Order must be filed as a motion for review with the Clerk of Court within fourteen (14) days of service of this Memorandum and Order and must state with particularity the specific portions of this Memorandum and Order for which review is sought. *See* Rule 72.02(b) of the Local Rules of Court. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Memorandum and Order. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981)

BARBARA D. HOLMES
United States Magistrate Judge